Curtis, J. (dissenting).
In 1859, Ann Gillett conveyed to Samuel Lord thirty feet in depth the rear part of lots Hos. 83 and 85 Forsyth street. These two lots were adjacent, and twenty-five feet each in width, and one hundred feet deep. The fronts were occupied by two five-story buildings, fifty-one feet in depth, the upper stories used as tenements, and the first stories as stores or tenements. In the rear of these, there was left a yard nineteen feet in depth, which Ann Gillett in 1859 covenanted with Samuel Lord not to obstruct within the space of ten feet for twenty years, granting him the privilege of windows, &c.
In 1870, Ann Gillett leased to the plaintiffs, “all that store on the first floor of the building known as No. 85 Forsyth street, in the city of Hew York, to be occupied by them as a dry-goods store, with the appurtenances,” for the term of five years from May 1, 1871. May 1, 1874, Ann Gillett leased to the defendants the two houses and lots, Hos. 83 and 85 Forsyth street, for the term of ten years, subject to the lease to the plaintiffs, and with the provision that any change made by them for business purposes should not interfere with the plaintiffs in the occupation under the lease to them.
Previous to the letting of the store, No. 85 Forsyth street, by Ann Gillett to the plaintiffs, the first floor was partitioned in the middle, the front part being used as a store; and the rear part, which was divided by partitions into two rooms, was used as a residence. There were two windows in the rear wall, about three by six feet in size, and a door between them leading into the *435 yard in the rear, where there were privies. There was another door opening from the “floor” into a hallway, which led from the front entrance to the yard.
The plaintiffs agreed to hire the store upon conditions : that the partition should be taken out; that the doors leading into the rear yard and hall should be closed up ; and the rear windows be bricked up about three feet, and the remainder be barred by six or eight iron bars. These changes’were made before the plaintiffs’ lease commenced.
The plaintiffs never had any means of access to the yard, except by going into the street, and thence through the hall. They never had keys to, and never used, the privies. They had water-closets elsewhere. In 1873, the plaintiffs, without consent of the landlord, enlarged the rear windows to about five by eight feet, their present size. This was prior to the lease of Ann Grillett to the defendants. Since the execution of the lease from Ann Grillett to the defendants of May 1, 1874, the latter have erected a wall within three feet of the rear of the plaintiffs’ store, about twenty feet high, and extending about four feet above the top of the plaintiffs’ rear windows. There is room between the wall and windows for the plaintiffs’ shutters to swing. The wall is painted white.
The evidence showed that this wall obstructed the light flowing through the present windows, and injured plaintiffs’ business.
The object of the action is to restrain the defendants from erecting the wall, and from occupying the yard to the exclusion of the plaintiffs.
The plaintiffs insist that they have the right to the full and unrestricted enjoyment of the light and air flowing into the store, to the extent that they had before the defendants obstructed it, and also the right of access to the yard, and that the defendants should be enjoined from proceeding with the building.
*436 The complaint was dismissed at the trial, and the plaintiffs excepted.
It is unnecessary to consider the evidence as to whether the plaintiffs were interfered with by the defendants, as complained of, in respect to light and air, as the learned judge at the trial stated, that for the purpose of hearing the motion to dimiss the complaint, he would “assume that there was an interruption of the light and air by the acts of the defendants, as stated in the complaint, and that the plaintiffs had various witnesses in court to prove such allegations.”
The plaintiff Doyle testified: “I did not exercise the right to visit the water-closet, because we had water-closets in the Grand street store. ’ ’ The evidence showed that the latter were in plaintiffs’ adjoining premises, and that there were water-closets in the rear of the yard of IsTo. 85 Forsyth street.
The first question for consideration is, what construction is to be given to the lease from Ann Gillett to the plaintiffs. The premises leased are therein described as “All that store on the first floor of the building known as ISTo. 85 Forsyth street, &c., to be occupied by them as a dry goods store, with the appurtenances.” The store with the appurtenances is distinctly demised, and the character of the occupation of it carefully designated.
In addition to what is expressed in the lease, there is other written evidence of the intention of the parties, as to what was to be enjoyed with the store. In the agreement of Ann Gillett of July 27, 1870, produced in evidence by the plaintiffs, she binds herself “ to cut a doorway in brick wall, and brick up present back door, and put iron bars in the two rear windows.” This agreement was carried into effect. It clearly manifests an intention that the plaintiffs should have the enjoyment of these windows looking into the yard, and that moreover she would place iron bars there to *437 protect them in such enjoyment from any trespasses, incident to the open nature of the yard, and by the change of the door another means of access was to be created. It is evident she knew these windows, with their incidents of light and air, were elements of value in the occupancy and letting of her store, from her having leased to Samuel Lord in 1859, for two hundred dollars, the right for twenty years to place windows in his building looking into this very yard, which she also-covenanted not to be obstruct.
This shows that she knew, when she undertook to protect these windows as a condition of the plaintiff’s taking the store, that their use without obstruction was-valuable, and that she intended it to pass with the store to the plaintiffs under the lease. Again, if her lease to the defendants of May 1,1874, is referred to, embracing-the premises in question, and under which the defendants claim, it will be seen that she not only makes it subject to the plaintiffs’ lease, but also provides that the defendants shall not interfere with the plaintiffs in the occupation under the lease to them. The evidence is, that the year previous to the lease to defendants, the-plaintiffs had very much enlarged the rear windows, and increased their capacity for light and air, to that extent modifying the nature of their occupancy.
From all these instruments which are to be considered together, it is apparent, that it was the intention of the lessor that the plaintiffs should have the right to the use of the rear windows, and access to the yard, without obstruction or interference. The written evidence shows the enjoyment of these rights and incidents was in the contemplation and intention of both parties at the time.
It is shown that the light from these windows is-highly desirable and beneficial, and necessary for a dry goods store, that being the occupancy of the prem *438 •ises, to which the plaintiffs were limited by the terms of their lease, and that their sales largely depended upon it. It can not be presumed that the plaintiffs were ignorant of its value when they took from their lessor an agreement specially providing for the protection of these windows. If the yard and windows were incident and appurtenant to the premises, can there be any question that they passed to the plaintiffs under the description of the store “ with the appurtenances,” as stated in their lease ? It is urged by the defendants, that the plaintiffs did not use the yard. They used it so far as it was an auxiliary to the enjoyment of the windows looking into it; they derived light and air from it, and if they did not use the water-closets, it was a preference which did not affect their legal rights in ■respect to the privileges of the yard.
From Bucher v. Sandford (Gouldsborough R. 99, Anno, 30 Eliz.) to Voorhees v. Burchard (55 N. Y. 98), and Marvin v. Brewster Iron Mining Co. (Id. 538), the courts have been constantly called on to construe what passes by the words cum pertinentus. It was early held that a curtilage or court-yard is parcel of the house and passes with it, because its use is a necessity (Curden v. Track, Croke Eliz. 89). A late jurist says, “ If a house or store be conveyed, everything passes which belongs to, and is in use for it, as an incident or appurtenance” (4 Kent Com. 467). He also again says, “That the right to the enjoyment of free and pure air, as incident to the estate, is likewise under the protection of the law ” (3 Kent Com. 448).
These definitions seem broad enough to embrace the rear windows and yard, and the tendency of the decisions is rather to enlarge than to restrict their scope.
In Huttemeyer v. Albro (18 N. Y. 50), it is said by Strong J., “The easement will exist for the common benefit, &c., if it is apparent from the conveyances and *439 the circumstances connected with the manner of the use and enjoyment of the land, that such was the intention of the parties.”
When anything is granted, access, and all else necessary for its full and free enjoyment, passes as an incident appurtenant (Comstock v. Johnson, 46 N. Y. 620; Voorhees v. Burchard, 55 N. Y. 103; Marvin v. Brewster Iron M. Co. Id. 549; Browning v. Delesme, 3 Sandf. 18).
Having arrived at the conclusion that the lease to the plaintiffs must be construed to pass, as appurtenances to the store, the rear windows and the unobstructed flow to them of light and air from the yard, as it was at the time of the demise, and also the right of access, and that the defendants’ title was subject to the occupancy of the plaintiffs, under their lease, of the yard as it then was, it becomes unnecessary to consider most of the remaining questions presented on the argument. Whether an implied covenant for quiet enjoyment exists in the lease to the plaintiffs, and what application should, be given in this case to the maxim, Cujus est solum, ejus est usque ad cesium, and what rule prevails as to ancient lights are among them. Nor do the cases of Palmer v. Wetmore (2 Sandf, 316), and Myers v. Gemmel (10 Barb. 537), seem relevant in this point of view, for they are instances where the landlord built on adjoining lots and not upon any part of the demised premises. Neither does the question arise to be necessarily passed upon, as to the effect upon the first conveyance of a severance by the common owner, upon the holders of the two portions, in respect to any open and visible servitude or benefit affecting their respective parts by him previously created.
Under this construction of the case as to what passed by the words, “ with the appurtenances,” it would seem that the plaintiffs were entitled to the injunction they moved for.
*440 The judgment and order appealed from should be reversed, and a new trial granted, with costs to abide the event.